FILED
2022 Jan-10  PM 03:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **MICHAEL JONES,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **4:20-cv-00960-CLM** |
| | ) | |
| **KILOLO KIJIKAZI,** | ) | |
| **Acting Commissioner** | ) | |
| **of the Social Security** | ) | |
| **Administration,** | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Michael Jones seeks disability, disability insurance, and Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Jones's application in an opinion written by an Administrative Law Judge ("ALJ"). Jones argues: (1) that the ALJ erred in evaluating the opinion of Dr. June Nichols, an examining consultative psychologist, (2) that he meets Listing 12.04, and (3) that the ALJ's hearing decision lacks the support of substantial evidence.

As detailed below, the ALJ applied the correct legal standards and substantial evidence supports his decision. So the court will **AFFIRM** the SSA's denial of benefits.

## I.   Statement of the Case

### A.   Jones's Disability, as told to the ALJ

Jones was 41 years old at the time of his alleged disability onset date. R. 572. Jones has a high school education and past relevant work experience as a truck driver. R. 577.

In his disability report, Jones alleged that he couldn't work because he suffers from bipolar disorder, depression, anxiety, bad disks/nerve damage in back, high blood pressure, and high cholesterol. R. 576. At the ALJ hearing, Jones testified that he left his last job because he started having panic attacks and suffering from mood swings, which caused him to keep getting into conflicts with his coworkers. R. 386. Jones then lost his commercial driver's license ("CDL") because of medication side effects. *Id.* Because of nerve pain in his back, Jones uses a cane to help him stand and walk. R. 389–90. And Jones says he can stand in one spot for only 5 or 10 minutes before needing to sit or move around. R. 389.

Jones lives with his wife and two children. R. 382. Jones has a current driver's license but seldomly drives. R. 383. He also only gets dressed 15 to 20 days within a 30-day period. R. 391. And when Jones gets dressed, his wife must help him. *Id.*

### B.   Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis. The intermediate step and Step 3 are the most important steps here, as Jones's challenges flow from the ALJ's decisions at these points in the evaluation process.

### C.    Jones's Application and the ALJ's Decision

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Jones applied for disability insurance benefits, a period of disability, and SSI in February 2018, claiming that he was unable to work because of various ailments, including bipolar disorder, anxiety, depression, bad disks in back, and nerve damage in back. After receiving an initial denial in June 2018, Jones requested a hearing, which the ALJ conducted in June 2019. The ALJ ultimately issued an opinion denying Jones's claims in July 2019. R. 10–31.

At Step 1, the ALJ determined that Jones was not engaged in substantial gainful activity and thus his claims would progress to Step 2.

At Step 2, the ALJ determined that Jones suffered from the following severe impairments: degenerative disc disease and depression.

At Step 3, the ALJ found that none of Jones's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Jones's residual functional capacity.

The ALJ determined that Jones had the residual functional capacity to perform sedentary work with these added limitations:

- Jones can only occasionally push or pull with lower extremities.

- Jones cannot climb ladders or scaffolds.

- Jones can occasionally climb ramps and stairs.

- Jones can occasionally balance and stoop.

- Jones cannot kneel, crouch, or crawl.

- Jones can have only occasional exposure to extreme heat, extreme cold, and vibration.

- Jones cannot have exposure to dangerous machinery or unprotected heights.

- Jones cannot work where he has to walk on uneven or slippery surfaces.

- Jones must be allowed to use a handheld assistive device when walking.

- Though Jones can understand and remember short and simple instructions, he cannot understand and remember detailed or complex instructions.

- Though Jones can complete simple, routine, repetitive tasks, he cannot complete detailed or complex tasks.

- Jones can have no more than occasional contact with the general public and co-workers.

- Jones can deal with changes in the workplace if the changes are introduced occasionally and gradually and are well explained.

- Jones may occasionally miss one to two days of work because of his impairments.

At Step 4, the ALJ found that Jones could not perform his past relevant work.

At Step 5, the ALJ determined that Jones could perform jobs, such as sorter, spotter,

and dowel inspector, that exist in significant numbers in the national economy and thus Jones was not disabled under the Social Security Act.

Jones requested an Appeals Council review of the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

### III.   Legal Analysis

Jones makes three arguments for why the ALJ erred in finding him not disabled. First, Jones argues that the ALJ erred in discounting the opinion evidence from Dr. June Nichols, a consultative psychologist. Second, Jones asserts that the ALJ erred in finding at Step 3 that his mental impairments didn't meet Listing 12.04. Finally, Jones contends that the ALJ's decision lacks the support of substantial evidence. The court will address each argument in turn.

### A.   Dr. Nichols's Opinion Evidence

Jones first argues that the ALJ erred in evaluating the opinions of Dr. June Nichols who performed a psychological consultative examination on Jones in June 2019. After the evaluation, Dr. Nichols found that Jones had ongoing problems with depression, active hallucinations, and anxiety that would make it hard for him to work. R. 960. She then noted that Jones could manage basic self-care except that his wife must help him put on socks and shoes. R. 960–61. Dr. Nichols found that Jones could understand, carry out, and remember short, simple, and 1 to 2 step instructions. R. 961. But Jones cannot maintain attention/concentration and pace for periods of at least two hours. *Id.* Dr. Nichols also determined that Jones cannot maintain a regular schedule with appropriate punctuality or a regular job without missing more than 1 to 2 days per month. *Id.*

Dr. Nichols then stated that Jones cannot sustain an ordinary work routine without the need for special supervision. *Id.* And she noted that Jones cannot seek and accept appropriate instructions and criticism from supervisors. *Id.* Dr. Nichols finally found that Jones cannot (1) maintain socially appropriate appearance, behavior, and social interactions, or (2) reliably and independently manage his finances. *Id.*

About a week after the consultative examination, Dr. Nichols filled out a mental health source statement for Jones. This one-page form required Dr. Nichols to circle 'yes' or 'no' and fill in short blanks about various disability-related topics. R. 962. Dr. Nichols responded that Jones can understand, remember, or carry out very short and simple instructions. *Id.* But Dr. Nichols answered that Jones cannot: (1) maintain attention, concentration and/or pace for periods of at least two hours; (2) perform activities within a schedule and be punctual with customary tolerances; (3) sustain an ordinary routine without special supervision; (4) adjust to routine and infrequent work changes; (5) interact appropriately with supervisors/co-workers; and (6) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. *Id.* Dr. Nichols then stated that she expected Jones to be off-task 60% of the time in an 8-hour day. *Id.* And Dr. Nichols noted that she expected Jones to miss 25 days of work in a 30-day period because of his psychological problems. *Id.*

The ALJ addressed Dr. Nichols's opinions in his hearing decision and explained that he didn't find them persuasive:

> I reviewed and considered Dr. Nichols's nonexamining opinions and do not consider them persuasive (Exhibit 10F). While there may be discrepancies between Dr. Nichols's specific opinions and markings and the limitations reflected in the claimant's residual functional capacity, these discrepancies are based on, *inter alia*, my independent review, my consideration of the claimant's testimony, and all other evidence in the aggregate, some of which may not have been available to Dr. Nichols at the time of her expressed opinions. Her evaluation is not consistent with the level of the claimant's treatment and the conservative treatment received thus far, especially when the claimant is [compliant] with his medication regimen. As such, her opinions do not have support and are not consistent with the aggregate record and testimony.

R. 23–24.

Jones raises two arguments related to the ALJ's handling of Dr. Nichols's medical opinions.

1. <u>Nonexamining physician error</u>: Jones first argues that the ALJ erred because he referred to Dr. Nichols as a nonexamining physician when she was in fact a one-time consultative examiner. The court rejects this argument.

To start, the ALJ's reference to "Dr. Nichols's nonexamining opinions" was probably a typo. Earlier in the ALJ's decision he recognized that Dr. Nichols evaluated Jones in June 2019. R. 21. The ALJ then detailed what Jones told Dr. Nichols and what she observed during the psychological evaluation. R. 21–22. So

the ALJ seems to have understood that Dr. Nichols was a consultative examiner, not someone who merely reviewed Jones's medical records.

And even if the ALJ mistook Dr. Nichols for a nonexamining physician, this court's review doesn't end with finding error if the error was harmless. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) ("We find that the ALJ made erroneous statements of fact, but we conclude that this was harmless error in the context of this case and that the ALJ applied the proper legal standards.").

Jones asserts that the ALJ's belief that Dr. Nichols was a nonexamining physician matters because the opinions of consultative examiners, like Dr. Nichols, are entitled to more weight than the opinions of non-examining, reviewing physicians. That was the old rule. The SSA's new regulations do away with the hierarchy of medical opinions and treating physician rule for all claims filed on or after March 27, 2017. *See* 20 CFR §§ 404.1520c(a), 416.920c(a). Under the new regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." *Id.*

And though Jones argues otherwise, the ALJ didn't reject Dr. Nichols's opinions because he thought she was a nonexamining physician. Instead, the ALJ found Dr. Nichols's opinions unpersuasive because "[h]er evaluation is not consistent with the level of the claimant's treatment and the conservative treatment received thus far, especially when the claimant is [compliant] with his medication

regimen." R. 23–24. So the court finds that any error in classifying Dr. Nichols as a nonexamining physician was harmless.

2. <u>'Some measure of clarity' lacking</u>: Jones next asserts that the ALJ failed to provide "some measure of clarity" for why he discounted Dr. Nichols's opinions. In support of this argument, Jones cites the rule that an ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). But that again was the rule under the old regulations. Under the new regulations, the ALJ still must articulate how persuasive he finds each medical source's opinion. *See* 20 CFR §§ 404.1520c(b), 416.920c(b). But the ALJ doesn't need to assign the medical opinions a specific evidentiary weight. 20 CFR §§ 404.1520c(a), 416.920c(a). Instead, the ALJ just needs to explain how he considered the factors of supportability and consistency when evaluating a medical source's opinion. 20 CFR §§ 404.1520c(b)(2), 416.920c(b)(2).

Here, the ALJ explained that Dr. Nichols's opinions weren't supported by the conservative treatment that Jones received. R. 23–24. And the ALJ determined that Dr. Nichols's opinions "are not consistent with the aggregate record and testimony." R. 24. So the ALJ sufficiently explained how he evaluated Dr. Nichols's opinions.

\* \* \*

To sum up, Jones's arguments don't persuade the court that the ALJ erred in evaluating Dr. Nichols's opinion evidence. And Jones notably hasn't argued that the ALJ gave invalid reasons for rejecting Dr. Nichols's opinions or that substantial evidence doesn't support the ALJ's decision to find Dr. Nichols's opinions unpersuasive. So the court needn't consider those arguments. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–83 (11th Cir. 2014).

## B.    Listing 12.04

Jones next asserts that the ALJ should have found that his mental impairments met Listing 12.04 (depressive, bipolar, and related disorders). This argument fails because although Jones cites several medical records in support of this argument, he fails to explain how these records show that he met the criteria of Listing 12.04.

At Step 3, if a claimant has an impairment that meets or equals a listing in 20 CFR Part 404, Subpart P, Appx. 1 and satisfies the SSA's duration requirement, the ALJ must presume that the claimant is disabled. *See* 20 CFR § 404.1420(a)(4)(iii). To establish a presumption of disability based on a listing, a claimant must show "a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citations omitted). In addition, a claimant's impairments must meet or equal ***all*** of the

specified medical criteria in a particular listing for the claimant to be disabled at Step 3. *Sullivan v. Zebley*, 493 U.S. 521, 530–32 (1990).

To satisfy Listing 12.04, Jones must show that his mental impairments meet either the requirements of both paragraphs A and B of Listing 12.04 or the requirements of both paragraphs A and C of Listing 12.04. *See* 20 CFR Part 404, Subpart P, Appx. 1, § 12.00A(2). The ALJ found that Jones's mental impairments didn't satisfy either the paragraph B or paragraph C criteria. R. 17–18.

A claimant's mental impairments satisfy the paragraph B criteria when the mental impairments "result in 'extreme' limitation of one, or 'marked' limitation of two, of [these] four areas of mental functioning":

- understand, remember, or apply information;

- interact with others;

- concentrate, persist, or maintain pace; and

- adapt or manage oneself.

20 CFR Part 404, Subpart P, Appx. 1, § 12.00A(2)(b). A claimant has a marked limitation when the claimant's functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. 20 CFR 404, Subpart P, Appx. 1, § 12.00F(2). A claimant has an extreme limitation when the claimant cannot function in this area independently, appropriately, effectively, and on a sustained basis. *Id.*

13

To satisfy the paragraph C criteria, a claimant must have a medically documented history of the existence of his mental disorder over a period of at least 2 years. 20 CFR 404, Subpart P, Appx. 1, § 12.04C. There must also be evidence of:

- Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; *and*

- Marginal adjustment, that is, the claimant has minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life.

*Id.*

Citing the record, including the opinion of State agency psychiatrist Dr. Robert Estock, the ALJ found that Jones didn't satisfy the paragraph B criteria because he had only moderate limitations in the four areas of mental functioning. R. 17–18. The ALJ then stated that he agreed with Dr. Estock that "the evidence fails to establish the presence of the 'paragraph C' criteria." R. 18. So the ALJ determined that Jones's mental impairments didn't meet Listing 12.04. R. 17–18.

Though the ALJ spent eight paragraphs explaining why Jones didn't satisfy Listing 12.04, Jones's briefs include only this conclusory argument for why the ALJ erred: "The evaluation by Dr. June Nichols as summarized on pages 8 – 12 of this brief confirms eligibility pursuant to Listing 12.04. Dr. Nichols opinions are substantiated by records of CED Mental Health 3F (R-690-722)." Doc. 12 at 26.

14

This argument is inadequate because it leaves both the Commissioner and the court wondering how the ALJ erred. Did the ALJ err because the evidence shows that Jones's impairments meet both the paragraph B and paragraph C criteria? Or do Dr. Nichols's opinions just show that Jones satisfied the paragraph B criteria? If so, how does Jones satisfy the paragraph B criteria? Does Jones have one extreme limitation or two marked limitations in the four areas of mental functioning? Jones's briefs don't say. So Jones has effectively abandoned the argument that the ALJ erred in finding that he didn't meet Listing 12.04. *See Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue."); *see also Sapuppo*, 739 F.3d at 681 ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

In any event, as explained, Jones has failed to establish that the ALJ erred in finding Dr. Nichols's opinion unpersuasive. And the ALJ pointed to substantial record evidence to support his determination that Jones didn't satisfy the paragraph B or paragraph C criteria. R. 17–18. So even if the evidence Jones points to supports a different determination, the ALJ didn't err in making his Step 3 findings. *See Winschel*, 631 F.3d at 1178 (It is not this court's role to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner.").

## C.    Substantial Evidence

Jones finally contends that substantial evidence didn't support the ALJ's decision to deny benefits. Jones first asserts that the ALJ erred by disregarding Dr. Nichols's psychological evaluation. But the ALJ didn't disregard Dr. Nichols's opinions. Instead, as detailed above, the ALJ considered Dr. Nichols's opinions and found them unpersuasive. So this argument fails.

Jones also argues that the ALJ erred in relying on the vocational expert's testimony to find that he was not disabled because the hypothetical question posed to the vocational expert didn't include all his limitations. According to Jones, the hypothetical question was deficient because it: (1) did not accurately state his psychological limitations, pain level, or residual functional capacity, and (2) assumed that Jones could perform sedentary work.

"[F]or a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* at 1180. But if substantial evidence supports the ALJ's finding that the claimant does not have a particular limitation, the ALJ need not include that limitation in his hypothetical question to the vocational expert. *Crawford*, 363 F.3d at 1161.

The hypothetical question that the ALJ relied on to find that Jones could work included all the limitations the ALJ assessed in Jones's residual functional capacity.

*Compare* R. 393–94 *with* R. 18. And Jones hasn't pointed to any specific limitations he has that the ALJ didn't include in his hypothetical question. So the ALJ properly relied on the vocational expert's answer to his question to determine that Jones could perform work that exists in significant numbers in the national economy. *See Wilson v. Barnhart*, 284 F.3d 1219, 1227–28 (11th Cir. 2002). In short, substantial evidence supports the ALJ's disability determination.

## IV.   Conclusion

In summary, the court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**DONE** on January 10, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE